TUTTLE et al. v. BOARD OF EDUCATION OF SALT LAKE CITY et al.

No. 5090.   Decided December 11, 1930.   (294 P. 294.)

*O. W. Carlson*, of Salt Lake City, for appellants.

*Cheney, Jensen & Marr*, of Salt Lake City, for respondents.

**STRAUP, J.**

The plaintiffs and appellants, taxpayers of Salt Lake City, Salt Lake County, Utah, petitioned the district court for a writ of mandate to compel the board of education of Salt Lake City and its members to prepare and adopt a budget for the fiscal year of July 1, 1930, to July 1, 1931, as set forth in the affidavit or petition of the plaintiffs. The district court issued an alternative writ requiring the defendants to prepare and adopt a budget as demanded by the plaintiffs, or to show cause why they should not do so. The defendants answered, and a trial was had and evidence adduced before the court on the issues joined. On the evidence and the pleadings the court made findings of fact, conclusions of law, and rendered judgment denying a peremptory writ and quashing the alternative writ theretofore issued. The plaintiffs appeal.

The board of education of Salt Lake City is a body corporate and is the acting board of education for the school district of Salt Lake City. The other named defendants are the acting members of the board. The statute relating to "School District Budget," chapter 29, Laws of Utah 1925, as amended by chapter 75, Laws of Utah 1927, p. 128, so far as material, is as follows:

"1. The superintendent of each school district in the State of Utah shall be and act as budget officer of such district, and on or before June 1 of each year, as such budget officer, he shall prepare and file with the board of education of his district a tentative budget which shall set forth in detail the revenues and expenditures of the preceding fiscal year, the estimated revenues and expenditures for the current fiscal year, his estimate of the revenues for the next succeeding fiscal year based upon the lowest rate of tax levy which, in his opinion, will raise the required amount of revenue by using as a basis of calculation, the current year's assessed valuation; he shall also file his detailed estimate of the essential essential expenditures for all purposes for the next succeeding fiscal year. There shall accompany this tentative budget a statement showing the financial condition of the district by funds as of May 1st of the current year and also the estimated financial condition by funds at the close of the current fiscal year. This tentative budget shall be made available

and placed on file with the clerk of the board of education for public inspection and continue so available and on file for a period of at least fifteen days prior to the adoption of a budget as hereinafter provided.

"2. On or before June 30 of each year the board of education of each school district in the State of Utah shall have prepared and shall adopt a budget for the next fiscal year, and shall make appropriations to govern expenditures of said succeeding year, provided that notice of the meeting of the board for the adoption of the said budget prepared by the board shall have been published in a daily newspaper of general circulation within the district, if such is published in the district, but in any event in a newspaper of general circulation in the district, at least one week in advance of the holding of such meeting and provided also that public hearing shall have been allowed on the budget prior to its adoption; and provided further that the budget prepared by the board of education shall have been on file with the clerk of the board and available for public inspection at least ten days prior to the holding of any public hearing thereon. *The classification of titles and accounts in such budget shall be equivalent to the district's classification of titles and accounts for the current year.* It shall be unlawful for any board of education to make any appropriation in excess of the estimated expendable revenue for the ensuing fiscal year. All unexpended balances of appropriations shall at the end of the fiscal year revert to the funds from which they were appropriated and shall be set up as revenue in the budget of the following year, and any existing deficits arising through excessive expenditures from former years shall be deducted from the estimated revenue for the ensuing year, to the extent of at least 10 per cent of the entire tax revenue of the district for the previous year, in determining the estimated expendable revenue. Any budget appropriation may be reduced by action of the board of education at any regular meeting of the board of education, provided notice of the proposed action be given to all members of the board and to the superintendent of the district at least one week in advance of such action. No increase shall be made in any appropriation allowed except upon the written request of the superintendent setting forth the emergency necessitating such request. Such written request shall promptly be made available for public inspection, and such request shall not be allowed unless notice of the consideration thereof shall have been published in a daily newspaper of general circulation in the district, if such is published in the district, but in any event of general circulation in the district, at least one week in advance of the meeting at which such request is to be considered and unless also a public hearing upon such request shall have been allowed. [Italics added.]

"3. Clerks of boards of education shall not draw warrants on school district funds except in accordance with and within the limits of the budget duly passed by the boards of education of their respective districts."

The controversy hinges chiefly on the meaning or application of that portion of the statute italicized. In such respect it is alleged in the petition and is admitted by the defendants that the budget as prepared and adopted by the defendants is as follows:

"Administration, $65,200.00
"Instruction, $1,961,500.00
"Operation of Buildings, $217,500.00
"Maintenance of Buildings, $113,000.00
"Auxiliary Agencies, $38,000.00
"Fixed Charges, $36,500.00
"Building Fund, $120,000.00
"Sinking Fund, $87,900.00
"Interest Fund, $171,000.00
"Reserve, $40,000.00"

It then is alleged that the classification of titles and accounts of Salt Lake City school district is as follows:

"Administration

"Board Elections
"Board Salaries
"Legal Services & Misc.
"Clerk's Office
"Bldgs. & Grounds
"Storekeeper
"Supt. of Schools' Office
"Adm. Buildings

"Maintenance

"Supervision
"Building Repairs & Impr.
"Grounds Upkeep & Improve.
"Furniture & Ed. Equip. Repr.
"Furniture & Ed. Equip. Impr.
"Shop Expenses

"Auxiliary Agencies
"Attendance & Placement Dept.
"Census Department
"Health Department
"Lecture & Assemblies
"Trasportation of Pupils

"Fixed Charges
"Rent
"Fire Ins. Premiums
"Employees' Compensation
"Teachers' Pensions
"Premiums on Bonds

"Instruction
"Principals' Salaries
"Clerks' Salaries
"Supervisors' Salaries
"Teachers' Salaries
"Textbooks
"Library Books
"School Supplies
"Domestic Science
"Phys. Edu. Supplies
"Laboratory Supplies
"Sewing Supplies
"Art Supplies
"Man. Training Supplies
"Kindergarten Supplies
"Other Expenses of Inst.
"R. O. T. C.
"Furniture & Educational Equipment

"Operation
"Supervision
"Custodians' Salaries
"Fuel
"Gas
"Water
"Light
"Power
"Janitors' Supplies
"Towels
"Garbage Disposal
"Operation Stock-Auto.

"Building Fund
"Plans & Supervision
"Sites
"Building Construction
"New Equipment
"Bond Interest Fund
"Sinking Fund
"Special Fund
"Reserve Fund."

It further is alleged that the classification of titles and accounts of the budget as prepared and adopted by the defendants is not equivalent to Salt Lake City school district's classification of titles and accounts, and that the budget as so prepared by the defendants does not comply with that portion of the statute italicized, and especially in the particular that the budget, as so prepared and adopted by the defendants, does not determine or fix the amount of moneys to be expended for or to be appropriated to the various titles and accounts as they are set up and maintained in the classification of titles and accounts in the books and records of the Salt Lake City school district. It further is alleged that upon notice given of the meeting of the board for the adoption of the budget as prepared by it, the plaintiffs appeared at such meeting and objected to the budget as prepared by the board and demanded that a budget be prepared and adopted as requested and demanded by the plaintiffs in their petition, but that the defendants refused to do so.

Upon the filing and presentation of such verified petition, the court issued the alternative writ. The defendants appeared and by their answer denied that the budget as prepared and adopted by them failed to embody or contain a classification of titles and accounts equivalent to Salt Lake City school district's classification of titles and accounts for the year in question, and alleged that the budget as prepared and adopted by them was in all respects in compliance with the requirements of the statute heretofore referred to, and denied that the school district's classification of the titles and accounts was as averred by the plaintiffs.

The defendants further averred that "the books and records of accounts of the school district are set up under the three titles required by the provisions of section 4704, Comp. Laws Utah 1917, and that under such titles said books and records contain a further sub-division and classification of accounts into main accounts and which are in turn subdivided in such books and records into numerous smaller and more detailed accounts," and that such books and records contain in excess of 1,500 accounts and are not limited to accounts as averred by the plaintiffs and as set forth in the alternative writ of mandate; that the accounts so contained in the books and records of account of the Salt Lake City school district are divided and classified as follows: "Administration, Instruction, Operation, Maintenance, Auxiliary Agencies, Fixed Charges, Building Fund, Bond Interest Fund, Sinking Fund, and Reserve Fund," and that the classification so employed by the district in its books and records of accounts for the current year was employed by the defendants in the budget approved and adopted by them.

The issue thus joined was tried to the court without a jury. Upon the evidence adduced the trial court made findings and conclusions in favor of the defendants and quashed the alternative writ. Among the findings so made the court found that the budget approved and adopted by the defendants for the fiscal year from July 1, 1930, to July 1, 1931, embodied and contained a classification of titles and accounts equivalent to Salt Lake City school district's classification of titles and accounts for such year and for the then current year, and that the classification so made by the defendants in all respects met the requirements of the statute heretofore referred to; that the books and records of accounts of the school district are set up under the three titles required by the provisions of Comp. Laws Utah 1917, § 4704, "to-wit, Support and Maintenance, Bond Interest, and Sinking Fund, and that under such titles said books and records contain a further subdivision and classification

of accounts into the following main accounts: Administration, Instruction, Operation, Maintenance, Auxiliary Agencies, Fixed Charges, Building Fund, Bond Interest Fund, Sinking Fund, and Reserve Fund, and that such main accounts are in turn subdivided in said books and records into numerous small and more detailed accounts, aggregating in excess of fifteen hundred in number"; and that the defendants in preparing and adopting a budget for the fiscal year in question "employed a classification of titles and accounts identified with that employed by said district in its books and records of accounts for such year, the classification so adopted and so employed being as follows: Administration, Instruction, Operation, Maintenance, Auxiliary Agencies, Fixed Charges, Building Fund, Bond Interest Fund, Sinking Fund, and Reserve Fund."

These findings are challenged by the plaintiffs, who in effect contend that they are not supported by the evidence and are mere conclusions of law and not justified by the statute prescribing the kind of budget to be prepared and adopted by the defendants. If what the court thus found is justified or supported by the record and by the statute, the judgment of the court below, of course, must be affirmed.

The "tentative budget" as prepared by the superintendent of the Salt Lake City school district and as transmitted to the defendants and filed with the clerk of the board was put in evidence. No point is made that such tentative budget was not full and complete or was not in every respect as by the statute required to be made. In addition the superintendent also submitted a statement showing the financial condition of the district by funds as of May 1st of the current year, and also the estimated financial condition by funds at the close of the current fiscal year, and a statement showing the receipts and expenditures of the preceding year, the estimated revenue and expenditure of the present fiscal year, the financial statement as of May 1, 1930, and the estimated financial statement as of June 30, 1930, and

other matters concerning the financial condition of the district, etc., all for the information and benefit of the board in preparing and adopting a budget by it. All these were on file and open to public inspection in the office of the clerk of the board.

The tentative budget as prepared and submitted by the superintendent is as follows:

Superintendent's Itemized Tentative Budget for the School Year 1930-31

| | Budget for 1929-1930 | Budget Changes | Budget for 1930-1931 |
|---|---|---|---|
| **Administration** | | | |
| Board Elections | $ ........ | $ 800.00 | $ 800.00 |
| Board Salaries | 1,000.00 | ...... | 1,000.00 |
| Legal Services & Misc. | 2,000.00 | ...... | 2,000.00 |
| Clerk's Office | 19,500.00 | 1,000.00 | 20,500.00 |
| Bldgs. & Grounds | 11,000.00 | ...... | 11,000.00 |
| Storekeeper | 7,500.00 | ...... | 7,500.00 |
| Supt. of Schools' Office | 20,000.00 | 1,000.00 | 21,000.00 |
| Adm. Buildings | 1,400.00 | ...... | 1,400.00 |
| | $ 62,400.00 | $ 2,800.00 | $ 65,200.00 |
| **Instruction** | | | |
| Principals' Salaries | $ 127,500.00 | $ 2,500.00 | $ 130,000.00 |
| Clerks' Salaries | 24,000.00 | 2,000.00 | 26,000.00 |
| Supervisors' Salaries | 29,000.00 | ...... | 29,000.00 |
| Teachers' Salaries | 1,633,500.00 | 20,000.00 | 1,653,500.00 |
| Textbooks | 35,000.00 | ...... | 35,000.00 |
| Library Books | 5,000.00 | ...... | 5,000.00 |
| School Supplies | 26,000.00 | 2,000.00 | 28,000.00 |
| Domestic Science | 3,250.00 | ...... | 3,250.00 |
| Phys. Edu. Supplies | 7,000.00 | ...... | 7,000.00 |
| Laboratory Supplies | 2,000.00 | –1,000.00 | 1,000.00 |
| Sewing Supplies | 1,000.00 | ...... | 1,000.00 |
| Art Supplies | 7,000.00 | ...... | 7,000.00 |
| Man. Training Supplies | 8,000.00 | –1,000.00 | 7,000.00 |
| Kindergarten Supplies | 1,750.00 | ...... | 1,750.00 |
| Other Expenses of Inst. | 5,000.00 | ...... | 5,000.00 |
| R. O. T. C. | 2,000.00 | ...... | 2,000.00 |
| Furniture & Educational Equip. | .......... | ...... | 20,000.00 |
| | $1,917,000.00 | $24,500.00 | $1,961,500.00 |

## Operation

| | | | |
|---|---|---|---|
| Supervision .................. | $ 3,000.00 | $ ...... | $ 3,000.00 |
| Custodians' Salaries ......... | 120,000.00 | ...... | 120,000.00 |
| Fuel ....................... | 32,000.00 | ...... | 32,000.00 |
| Gas ⎫<br>Water ⎬ .................... <br>Light ⎭ | 17,000.00 | ...... | 17,000.00 |
| Power ..................... | 13,000.00 | ...... | 13,000.00 |
| Janitors' Supplies ............ | 8,500.00 | ...... | 8,500.00 |
| Towels .................... | 10,000.00 | 2,000.00 | 12,000.00 |
| Garbage Disposal ............ | 1,000.00 | ...... | 1,000.00 |
| Operation Stock-Auto ........ | 11,000.00 | ...... | 11,000.00 |
| | $ 215,500.00 | $ 2,000.00 | $ 217,500.00 |

## Maintenance

| | | | |
|---|---|---|---|
| Supervision .................. | $ 3,000.00 | $ ...... | $ 3,000.00 |
| Building Repairs & Impr. ..... | 72,000.00 | ...... | 72,000.00 |
| Grounds Upkeep & Improve ... | 20,000.00 | ...... | 20,000.00 |
| Furniture & Ed. Equip. Repr... | 14,000.00 | ...... | 14,000.00 |
| Furniture & Ed. Equip. Impr.. | 20,000.00 | Transf'd | .......... |
| Shop Expenses .............. | 4,000.00 | ...... | 4,000.00 |
| | $ 133,000.00 | $ ...... | $ 113,000.00 |

## Auxiliary Agencies

| | | | |
|---|---|---|---|
| Attendance & Placement Dept.. | $ 9,500.00 | $ 2,500.00 | $ 12,000.00 |
| Census Department .......... | 8,000.00 | ...... | 8,000.00 |
| Health Department .......... | 8,000.00 | 2,000.00 | 10,000.00 |
| Lectures & Assemblies ........ | 1,000.00 | ...... | 1,000.00 |
| Transportation of Pupils ..... | 7,000.00 | ...... | 7,000.00 |
| | $ 33,500.00 | $ 4,500.00 | $ 38,000.00 |

## Fixed Charges

| | | | |
|---|---|---|---|
| Rent ....................... | $ 6,500.00 | $ ...... | $ 6,500.00 |
| Fire Ins. Premiums .......... | 12,000.00 | ...... | 12,000.00 |
| Employees Compensation ..... | 2,500.00 | ...... | 2,500.00 |
| Teachers' Pensions ........... | 11,000.00 | 1,000.00 | 12,000.00 |
| Premiums on Bonds .......... | 2,500.00 | 1,000.00 | 3,500.00 |
| | $ 34,500.00 | $ 2,000.00 | $ 36,500.00 |

Building Fund

| | | | |
|---|---|---|---|
| Plans & Supervision | | | |
| Sites | $ 108,000.00 | $12,000.00 | $ 120,000.00 |
| Building Construction | | | |
| New Equipment | | | |
| Bond Interest Fund | $ 185,500.00 | $14,500.00 | $ 171,000.00 |
| Sinking Fund | 78,400.00 | 9,500.00 | 87,900.00 |
| Special Fund | 25,000.00 | 15,000.00 | 40,000.00 |
| Totals | $2,792,800.00 | $57,800.00 | $2,850,600.00 |

There was also put in evidence the superintendent's estimate of revenue for the school year 1930-31; statements of receipts and disbursements of funds for the preceding fiscal year; estimates of receipts and disbursements for the current fiscal year; statements of the financial condition by funds May 1, 1930, and the estimated financial condition of funds June 30, 1930, all of which were itemized in detail.

The clerk of the school board was called as a witness, and in substance testified that he had in his custody various books in which were entered the transactions of the school district and of the school board; that he had the minutes of the meeting of the board held June 24, 1930, at which time the board adopted as its budget for the next fiscal year the ten main headings of the superintendent's tentative budget totaling $2,850,600 and as heretofore indicated; that the school board "in its bookkeeping set up carried a general ledger in which the customary ledger accounts were reported, a combination cash book and voucher register, a subsidiary distribution record in two volumes, an appropriation ledger, and a journal, the voucher register, the subsidiary distribution books and the appropriation ledger," which were brought into court; that the voucher record was labeled "Maintenance Fund"; that two other large books were entitled "Distribution Records, Numbers 1 and 2"; that the superintendent filed an itemized budget for the information of the board, consisting of ten main headings, "Administration," "Instruction," "Operation of Buildings," "Maintenance of Buildings," "Auxiliary Agencies," "Fixed

Charges," "Building Fund," "Interest Fund," "Sinking Fund," and "Reserve Fund," making a total of $2,850,600, which headings were adopted as the headings of the board's budget; that "we keep accounts under these ten main headings and we use those same names in our books, and in our books we subdivide under those ten main headings into the sub-headings set forth in the Alternative Writ of Mandate; for instance, under the subject of 'Administration' we have Board Election, Board Salaries, Legal Services and Miscellaneous, Clerk's Office, Buildings and Grounds, Storekeeper, Superintendent of Schools' Office, and Administration Buildings, as set out in the affidavit for the writ of mandate and those sub-headings are in our books divided into even smaller accounts. I estimate that our books contain 2,000 or 2,500 accounts. The appropriation ledger is a record of sub-accounts"; that the general headings appearing on the superintendent's tentative budget "are in our books and there are no headings" on such tentative budget "that are not in our books," and they are placed in the same order in the tentative budget as "they are in our books and the sub-headings are identical with our headings, except we carry that division into greater detail in our accounts"; that in the appropriation record "we follow out the arrangement of headings as they appear" on the superintendent's tentative budget; that in the appropriation ledger "we have, for instance, 'Administration' and under administration we have Board Election, Board Salaries, Legal Services and Miscellaneous, etc., and under 'Instruction' we have our appropriation ledger, Principals' Salaries, Clerk's Salaries, Supervisors' Salaries, etc., and in like fashion we have these other general headings and subdivisions."

It is the contention of the plaintiffs that the board was required to prepare and adopt a budget not only of general or main headings, but also of subdivisions under each general or main heading, together with the amount of moneys to be appropriated for and under each subdivision as was prepared by the superintendent's tentative budget, and that

nothing short of that constituted a compliance with the statute; that the board, instead of doing that, prepared and adopted a budget by taking merely the ten or eleven main or general headings as shown by the superintendent's budget with the amount of moneys appropriated or to be appropriated under each main or general heading; and that the budget which was adopted by the board is not as found by the trial court a classification of titles and accounts equivalent to the district's classification of titles and accounts.

The meaning of the terms as used in the portion of the statute italicized admittedly is somewhat obscure. There is not much difficulty as to the meaning of the word "classification" as used in the statute. As so used the word may well mean a grouping of classes; a putting together of like subjects or facts under a common designation. Standard Dictionary. A little more difficulty is perceived as to the meaning of the words "titles and accounts." The word "title," of course, has various meanings. As used in the statute we think the reasonable meaning to be given it is a descriptive caption or heading (Century Dictionary), an inscription that serves as a name designating something (Standard Dictionary), or used in a similar sense in which the word is used to designate the character of a document or of the name of an act of the Legislature. The word "account" often is used in the sense of a record or statement of debits and credits, of receipts and expenditures, or other business transactions, or a statement or record of financial or pecuniary transactions. Standard Dictionary; Century Dictionary. The record or statement may be general, or it may in detail show each item of receipts and expenditures, or each item or detail of the financial or pecuniary transaction. In the use of the term "accounts" it is rather hard to believe the Legislature meant anything more than a mere general statement or summary, and not a detailed financial statement of items of receipts and expenditures, or petty details of administra-

tion.   Nor does the budget as demanded by the plaintiffs involve an itemization of receipts or disbursements or of financial statements in detail.   Both parties in effect agree that a budget is not required which will destroy or unduly interfere with the exercise of the sound judgment or discretion of the board in the administration of the affairs of the district.   The meaning of the words, "the district's classification of titles and accounts," as used in the statute, is still more troublesome.   The board, of course, had full charge and administered all of the affairs of the school district and transacted all the business for and on its behalf.   It employs the superintendent and all agents and employees, including a clerk, bookkeeper, and all other clerical help of the board.   The statute does not prescribe how or by what means "the district's classification of titles and accounts" is to be ascertained or determined, or how the classification is to be made.   Both parties present the cause on the theory that such words or phrase means a "classification" as shown by the books and records of the board.   Since the parties themselves so considered it, we, for purposes of the case, shall give the words or phrase the same meaning. Books and records of the board were put in evidence and submitted to the trial court for inspection.   Neither they, nor copies thereof, or abridgments, are made a part of or preserved by the bill of exceptions.   The only knowledge we have of the contents of them, or as to a classification of titles and accounts as shown by the records and books of the board, is the testimony of the clerk.   From his testimony it appears that accounts in the books and records of the board were kept under the ten or eleven "main headings" and by "the same names" as employed by the tentative budget prepared and presented by the superintendent, and as were adopted by the board in making its budget, but that such main headings were further subdivided into subheadings or subdivisions, as set forth in the demanded budget of the plaintiffs and in the alternative writ of mandate; and that such subdivisions were again in the books further

divided into smaller accounts aggregating 2,000 or 2,500 accounts. We thus on the record are of the opinion that the findings made by the court that the classification of titles and accounts as made by the board was in effect equivalent to the main or general classifications as shown by the books and records of the board are supported by the record.

There is a further question involved. Mandate does not lie unless the relator or petitioner shows a clear legal right to the performance of the act demanded and a plain duty of the officer, board, or other tribunal to perform it as demanded, and where the duty to perform the act is doubtful, or where a discretion is imposed or involved in the performance of it, mandate ordinarily will not compel the performance of it in a particular way or manner. We have held that many times. That in making and adopting a budget some discretion and judgment is imposed on and is required by the board may not well be doubted. The statute does not prescribe the kind of classification of titles and accounts to be made by the board, or how full and complete it is to be made, whether by only a general classification or to what extent the classification is required to descend to particulars or details. The requirement of the statute in such particular is that the classification shall be equivalent to the district's classification. But how or in what manner the district's classification is to be made, or how the classification is to be made to appear, or to be ascertained or determined, likewise is not prescribed. From all this it is apparent that to compel the board to make a particular kind of budget, or one as specifically demanded by the plaintiffs, or to direct what subjects or statements or enumerations or details are to be stated in the budget and to compel or coerce the board to make such or any particular kind of budget, is, to say the least, of very doubtful propriety. Here the petitioners demanded that a specific budget be adopted by the board in accordance with the tentative budget prepared and submitted to the board by the superintendent showing not only the ten or eleven

main headings or classifications, but also the subdivisions thereof as indicated by the superintendent's budget together with a statement of the amount of money appropriated or to be appropriated to each subdivision, not necessarily in the amounts as indicated by the superintendent, but in whatever amount the board should determine. To do that, it is argued by the plaintiffs, is necessary to prevent the board, after the adoption of the budget, from taking or using moneys appropriated to a designated subdivision, say, "physical education supplies" under the main heading "Instruction," and applying them to another subdivision, say, "Domestic Science" under the same main heading, and to prevent whatever moneys should be appropriated to each subdivision from being devoted or applied to another subdivision though under the same main heading; and if there be no sufficient moneys appropriated for a particular subdivision and more is required, the board, to increase it, is required to have the written request of the superintendent showing the necessity thereof, publish a notice in a newspaper, and grant a public hearing to determine the necessity and allowance of such increase. To the contrary, the board urges that in the making of its budget it was not required to so restrict itself, or to make or adopt a budget creating or designating such subdivisions and make specific appropriations to each; that to require it to do that, and to so apply the moneys appropriated and not otherwise, would interfere with the proper and orderly administration of the affairs and business of the board and of the district, and entail unnecessary expense; and that the board, as to whatever appropriations are made to or under any main heading or classification, ought to be permitted to use and apply them to whatever matter or thing may be included within such main heading or classification.

On the record and under the statute we are not prepared to say that the board may not make and adopt such a budget as was here adopted by it. At any rate, under the statute and on the record, for the reasons heretofore stated, we

doubt the propriety of compelling the board to make a particular character of budget or to direct it as to the particular subjects and statements required to be stated therein.

The judgment of the court below is therefore affirmed, with costs to the respondent.

CHERRY, C. J., and ELIAS HANSEN, EPHRAIM HANSON, and FOLLAND, JJ., concur.